UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JONATHAN JACKSON,

          **Plaintiff,**

 vs.                   **9:19-CV-193**
                        **(MAD/TWD)**
**J. RELF, et al.,**

          **Defendants.**
_____

APPEARANCES:            OF COUNSEL:

JONATHAN JACKSON
05-A-2182
Otisville Correctional Facility
Box 8
Otisville, New York 10963
Plaintiff *pro se*

LETITIA JAMES           ERIK BOULE PINSONNAULT, AAG
OFFICE OF THE NEW YORK
STATE ATTORNEY GENERAL
The Capitol
Albany, NY 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## ORDER

   Jonathan Jackson ("Plaintiff"), an inmate in the custody of the New York State Department of Corrections and Community Supervision, commenced this *pro se* action pursuant to 42 U.S.C. § 1983, asserting his constitutional rights were violated at Great Meadow Correctional Facility. *See* Dkt. No. 1. Specifically, Plaintiff alleges that he was subjected to unwarranted disciplinary sanctions following a disciplinary hearing which he contends did not adequately protect his due process rights. *See id.* His initial disciplinary determination was later

1

reversed by the Director of Special Housing/Inmate Disciplinary Program, after Plaintiff had served a total of approximately 118 days in disciplinary confinement. *See id.*; Dkt. No. 34 at 4; Dkt. No. 48-7 at ¶ 15. Plaintiff was confined in the special housing unit ("SHU") for approximately 18 days and then in keeplock for approximately 100 days. *See id.*

In an April 8, 2019 Decision and Order, this Court found that Plaintiff's Fourteenth Amendment disciplinary due process claim against Defendant Relf and Plaintiff's Fourteenth Amendment due process claims against Defendants Brockley and Scarlotta survived *sua sponte* review and required a response. *See* Dkt. No. 7 at 20. Plaintiff's remaining claims were dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted. *See id.*

On December 29, 2020 Defendants moved for summary judgment on grounds that (1) Plaintiff was not deprived of a protected liberty interest sufficient to support his Fourteenth Amendment due process claims; and (2) Plaintiff's due process claims against Defendants Brockley and Scarlotta fail for lack of personal involvement. *See* Dkt. No. 48. Plaintiff opposed the motion and Defendants filed a reply. *See* Dkt. No. 52; Dkt. No. 53. In a Report-Recommendation and Order filed on May 12, 2021, Magistrate Judge Dancks recommended that Defendants' motion be granted, and Plaintiff's complaint be dismissed in its entirety with prejudice. *See* Dkt. No. 55 at 18. Plaintiff did not object to the Report-Recommendation and Order. For the reasons that follow, Defendants' motion for summary judgment is granted, and Plaintiff's complaint is dismissed in its entirety with prejudice.

The Due Process Clause of the Fourteenth Amendment states that "[n]o State shall ... deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. "A liberty interest may arise from the Constitution itself, ... or it may arise from an

expectation or interest created by state laws or polices." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (internal citations omitted). "Although prison inmates necessarily have their liberty severely curtailed while incarcerated, they are nevertheless entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations such as loss of good-time credit or special confinement that imposes an atypical hardship." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citations omitted). These protections include providing the inmate with "advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." *Smith v. Fischer*, 803 F.3d 124, 127 (2d Cir. 2015) (citing *Wolff v. McDonald*, 418 U.S. 539, 564-70 (1974); *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004)).

To establish a Fourteenth Amendment procedural due process claim under Section 1983, a plaintiff must show he (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998).

An inmate retains a protected liberty interest in remaining free from segregated confinement if he can satisfy the standard set forth in *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Therefore, a plaintiff must show that (1) the state actually created a protected liberty interest in being free from segregation, and (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84; *Tellier*, 280 F.3d at 79-80; *Hynes*, 143 F.3d at 658. As to the first factor, "[t]he prevailing view in this Circuit is that, by its regulatory scheme, the State of New York has created

3

a liberty interest in remaining free from disciplinary confinement, thus satisfying the first *Sandin* factor." *Liao v. Malik*, No. 9:13-CV-1497, 2016 WL 1128245, *4 (N.D.N.Y. Feb. 26, 2016) (citations omitted). Regarding the second factor, the plaintiff bears the "burden of proving that the conditions of his confinement constituted an atypical, significant hardship in relation to the ordinary incidents of prison life in order to recover damages" under Section 1983. *Vasquez v. Coughlin*, 2 F. Supp. 2d 255, 260 (N.D.N.Y. 1998) (citations omitted). The Second Circuit has instructed that in determining whether an inmate's SHU confinement has imposed an atypical and significant hardship, a court must consider, among other things, both the duration and conditions of confinement. *See J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir. 2013) (citations omitted). Thus, while not dispositive, the duration of a disciplinary confinement is a significant factor in determining atypicality. *See Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (citations omitted).

The Second Circuit, while avoiding "a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights[,]" has established guidelines as to the duration of a disciplinary confinement that may constitute atypical conditions of confinement. *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). Confinement for 101 days or fewer under typical punitive segregation conditions "generally do[es] not constitute 'atypical' conditions of confinement." *Bunting v. Nagy*, 452 F. Supp. 2d 447, 456 (S.D.N.Y. 2006) (quoting *Sealey v. Giltner*, 197 F.3d 578, 589 (2d Cir. 1999)). Conversely, 305 days or more of segregated confinement has been deemed an atypical and significant hardship. *See Colon*, 215 F.3d at 231-32. "A period of confinement between 101 and 305 days is considered to be an 'intermediate duration' and could implicate a liberty interest should a detailed record of the conditions of

4

confinement indicate that it was an atypical and significant hardship." *Bunting*, 452 F. Supp. 2d at 456 (citing *Sealey*, 197 F.3d at 589); *see also Palmer*, 364 F.3d at 64-65.

The undisputed record evidence demonstrates that Plaintiff was housed in disciplinary confinement for approximately 118 days. Dkt. No. 49-7 at ¶ 15. As the duration of Plaintiff's disciplinary confinement "was not long enough to constitute an atypical and significant deprivation by itself," this Court considers "the conditions of confinement" as alleged by Plaintiff. *Smith v. Hamilton*, No. 9:15-CV-0496, 2016 WL 3823395, *3 (N.D.N.Y. July 12, 2016) (quoting *Palmer*, 364 F.3d at 66). In this regard, Plaintiff claims he was also penalized with loss of packages, commissary, telephone, and contact visitation. Plaintiff does not claim, and the record does not support, that he endured conditions that could be construed as atypical or unusual. *See McEachin v. Selsky*, No. 9:04-CV-0083, 2010 WL 3259975, *9 (N.D.N.Y. Mar. 30, 2010) ("It is expected that confinement in SHU will be accompanied by a loss of privileges that prisoners in the general population enjoy and such conditions fall 'within the expected parameters of the sentence imposed by a court of law.'") (citations omitted); *Frazier v. Coughlin*, 81 F.3d 313, 315, 317 (2d Cir. 1996) (holding that loss of commissary, recreation, package, and telephone privileges did not amount to an atypical and significant deprivation); *Nogueras v. Coughlin*, No. 94-CV-4094, 1996 WL 487951, *5 (S.D.N.Y. Aug. 27, 1996) ("Restrictions on telephone use, recreational activities, access to law libraries, visitation, personal property, educational and employment opportunities" did not amount to atypical hardship). Plaintiff's allegations regarding the cleanliness of his SHU cell, which included that the cell was "dirty" and "had stains on the wall"; and that the blankets provided "had a certain urine smell," were raised for the first time in Plaintiff's response to Defendants' motion for summary judgment. *See* Dkt. No. 53 at 3-4; *compare* Dkt. No. 52 at 3, 7, *with* Dkt. No. 48-3 at 51-53, 76-79; *see also* Dkt. No. 48-7 at ¶ 16.

5

As Magistrate Judge Dancks correctly asserts in her Report-Recommendation and Order, such conclusory statements, some of which were raised for the first time in opposition to Defendants' motion for summary judgment, fail to raise a genuine dispute of material fact. *See* Dkt. No. 55 at 13. Given the totality of the evidence, Plaintiff has not raised a triable issue of fact as to whether the 118 days of disciplinary confinement was an atypical hardship under *Sandin*. *See Jabot v. Correction Officer Minor*, No. 9:13-CV-01407, 2016 WL 5322113, *8 (N.D.N.Y. July 15, 2016) (holding that 200 days of disciplinary confinement in the SHU at a county correctional facility, along with a loss of privileges such as telephone and visitation, was insufficient to warrant constitutional protections even though the plaintiff also experienced a lack of sleep, difficulty eating, and being shackled during facility transport). The Court, therefore, finds that Plaintiff's disciplinary confinement at issue fails to implicate a protected liberty interest.

Defendants Brockley and Scarlotta further contend that they are entitled to summary judgment for lack of personal involvement. *See* Dkt. No. 48-2 at 14-19. "To establish a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation." *Boley v. Durets*, 687 Fed. Appx. 40, 41 (2d Cir. 2017) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). A plaintiff must directly plead and prove that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020) (internal quotation marks omitted) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

Plaintiff asserts that Defendant Brockley, at the direction of Defendant Scarlotta, issued him a false misbehavior report and that both Defendants Brockley and Scarlotta provided false testimony at the disciplinary hearing, thereby depriving Plaintiff of his constitutional right to due process. *See* Dkt. No. 55 at 14. However, even if this assertion is true, "[t]he filing of a false

6

report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing." *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986). Rather, "[t]he issuance of false misbehavior reports and provision of false testimony against an inmate ... violates due process only where either procedural protections were denied that would have allowed the inmate to expose the falsity of the evidence against him, ... or where the fabrication of evidence was motivated by a desire to retaliate for the inmate's exercise of his substantive constitutional rights[.]" *Mitchell v. Senkowski*, 158 Fed. Appx. 346, 349 (2d Cir. 2005) (internal citations omitted).

The record demonstrates that the misbehavior report was formally served on Plaintiff on July 14, 2018. *See* Dkt. No. 48-4 at ¶ 14. Plaintiff met with his assigned assistant on July 18, 2018. *See id.* at ¶¶ 15, 16. The Tier III disciplinary hearing began on July 20, 2018, and Plaintiff was present at the hearing. *See id.* at ¶ 17. Defendant Relf read the misbehavior report into evidence at the hearing. *See id.* at ¶ 18. Plaintiff then pleaded not guilty to the charges and declined to provide testimony, stating that he had no testimony to give. *See id.* at ¶ 20. Thus, as Magistrate Judge Dancks correctly found in her Report-Recommendation and Order, Plaintiff was adequately afforded a hearing on his claim that he was falsely accused and denied due process and that would have allowed him to expose the falsity of the lodged charges. *See* Dkt. No. 55 at 16.

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Danck's May 12, 2021 Report-Recommendation and Order is **ADOPTED in its entirety** for the reasons set forth therein; and the Court further

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 48) is **GRANTED in its entirety**; and the Court further

**ORDERS** that this action is **DISMISSED in its entirety with prejudice**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 6, 2021
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge